1

PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiffs

2

3

4

5

6

7

8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

11 | BRITTNEY MEJICO, an individual, and ABELARDO MARTINEZ, JR., an individual,

12

13        Plaintiffs,

14        v.

15 | ANASTASIA BEVERLY HILLS, LLC, a California limited liability company; and DOES 1-10, inclusive,

16

17        Defendants.

Case No. 5:19-cv-00216

**COMPLAINT FOR VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND THE UNRUH CIVIL RIGHTS ACT**

**DEMAND FOR JURY TRIAL**

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs Brittney Mejico and Abelardo Martinez, Jr. (collectively, "Plaintiffs"), allege the following upon information and belief based upon investigation of counsel, except as to their own acts, which they allege upon personal knowledge:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, for Plaintiffs' claims arising under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181 *et seq.*

2.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' pendent claims under the California Unruh Civil Rights Act, Cal. Civil Code § 51 *et seq.* ("Unruh Act").

3.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because Plaintiffs reside in this District, Defendant's principal place of business is located in this District, and a substantial portion of the conduct complained of herein occurred in this District.

## INTRODUCTION

4.     As recently recognized by the Supreme Court of the United States, "The Internet's prevalence and power have changed the dynamics of the national economy." *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2097 (2018) (noting that in 1992, less than 2 percent of Americans had Internet access whereas today that number is about 89 percent). According to 2018 polling data, 89 percent of American adults use the Internet.[1] Indeed, one federal district court has noted that "few areas are more integral to 'the economic and social mainstream of American life,' than the Internet's websites." *Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at *9 (S.D.N.Y. Dec. 20. 2017); *United States v. Peterson*, 248 F.3d 79, 83 (2d Cir. 2001)

---

[1] http://www.pewinternet.org/fact-sheet/internet-broadband/ (last visited July 30, 2018). Indeed, 98 percent of adults between the ages of 18-29 use the Internet, and 97 percent of adults between the ages of 30-49 use the Internet. *Id.*

1   ("Computers and Internet access have become virtually indispensable in the modern

2   world of communications and information gathering.").

3       5.       According to recent U.S. Census data, approximately 8 million Americans

4   describe themselves as disabled because they are visually-impaired.[2]  Thus, depriving

5   blind persons of equal access to commercial websites on the Internet would allow

6   American businesses to treat blind persons as second-class citizens who can be

7   segregated from the rest of American society, which is antithetical to the very purpose

8   that motivated Congress to enact the ADA almost three decades ago.  " 'Congress found

9   that 'historically, society has tended to isolate and segregate individuals with

10  disabilities, and, despite some improvements, such forms of discrimination against

11  individuals with disabilities continue to be a serious and pervasive social problem.' ' "

12  *Del-Orden*, 2017 WL 6547902, at *9 (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661,

13  674-75, 121 S. Ct. 1879 (2001) (quoting 42 U.S.C. § 12101(a)(2))).  "Congress found

14  that 'physical or mental disabilities in no way diminish a person's right to fully

15  participate in *all aspects of society*, yet many people with physical or mental disabilities

16  have been precluded from doing so because of discrimination.'"  *Del-Orden*, 2017 WL

17  6547902, at *9 (quoting 42 U.S.C. § 12101(a)(1)) (emphasis added in *Del-Orden*).

18  "After thoroughly investigating the problem, Congress concluded that there was a

19  'compelling need' for a 'clear and comprehensive national mandate' to eliminate

20  discrimination against disabled individuals, and to integrate them 'into the economic

21  and social mainstream of American life.'"  *PGA Tour*, 532 U.S. at 675 (quoting S. Rep.

22  No. 101-116, p. 20 (1989); H.R. Rep. No. 101-485, pt. 2, p. 50 (1990), U.S.C.C.A.N.

23  1990, pt. 2, pp. 303, 332).  To remedy these ills, "Congress provided [a] broad

24  mandate" in the ADA to effect the statute's "sweeping purpose."  *Id.*  "In a society in

25

26  [2] In 2016, an estimated 7.7 million Americans reported having a visual disability.
    http://www.disabilitystatistics.org/reports/acs.cfm?statistic=1

27  (last visited July 30, 2018).  The statistics were calculated by the Cornell University
    Yang Tan Institute using the U.S. Census Bureau's 2016 American Community Survey

28  (ACS) Public Use Microdata Sample (PUMS) data.  The estimate is based on a sample
    of 3,085,278 persons who participated in the 2016 ACS.

which business is increasingly conducted online, excluding businesses that sell services through the Internet from the ADA would[:] 'run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages ***available indiscriminately to other members of the general public***'". *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012) (emphasis added) (quoting *Carparts Distrib. Ctr. v. Auto Wholesaler's Ass'n*, 37 F.3d 12, 20 (1st Cir. 1994)).

6.     Section 51(f) of the California Civil Code provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

7.     Plaintiffs are blind individuals who require screen reading software to read website content and access the internet.  Defendant Anastasia Beverly Hills, LLC ("Defendant") maintains its website, www.anastasiabeverlyhills.com (the "Website") in such a way that the Website contains numerous access barriers preventing Plaintiffs, and other blind and visually-impaired individuals, from gaining equal access to the Website.  Defendant's denial of full and equal access to the Website, and therefore its products and services offered thereby, are a violation of Plaintiffs' rights under Americans With Disabilities Act and California's Unruh Civil Rights Act.

## PARTIES

8.     Plaintiff Brittney Mejico resides in San Bernardino County, California. Plaintiff Abelardo Martinez, Jr. resides in Riverside County, California.  Plaintiffs are permanently blind and use screen readers in order to access the internet and read website content.  Despite several attempts to use and navigate the Website, Plaintiffs have been denied the full use and enjoyment of the facilities and services of the Website as a result of accessibility barriers on the Website.  The access barriers on the Website have caused a denial of Plaintiffs' full and equal access multiple times in the past, and deterred Plaintiffs on a regular basis from accessing the Website.

9.     While Plaintiffs genuinely want to avail themselves of Defendant's goods and services as offered on the Website, Plaintiffs have dual motivations: they also are "testers," which one federal court has defined to be "individuals with disabilities who visit places of public accommodation to determine their compliance with Title III [of the ADA]." *Harty v. Burlington Coat Factory of Penn., L.L.C.*, Civil Action No. 11-01923, 2011 WL 2415169, at *1 n.5 (E.D. Pa. June 16, 2011).   Indeed, it is widely accepted that "testers" such as Plaintiffs advance important public interests and should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).   Plaintiffs have filed multiple lawsuits against various operators of commercial websites under Title III of the ADA as part of their advocacy work on behalf of the civil rights of visually-impaired persons.   Plaintiffs intend to continue to engage in such advocacy work into the foreseeable future to ensure that Defendant's commercial website and others are fully and equally enjoyable to and usable by visually-impaired persons, including themselves.

10.     Plaintiffs are informed and believe, and thereon allege, that Defendant Anastasia Beverly Hills, LLC ("Defendant") is a California limited liability company with its principal place of business located in Los Angeles, California.   Plaintiffs are informed and believe, and thereon allege, that Defendant owns, operates and provides to the public the Website.   The Website provides access to Defendant's array of services, including descriptions of its products, amenities and services, and many other benefits related to these facilities and services.   The Website is a public accommodation within the definition of Title III of the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181(7) and likewise is a "business establishment" within the meaning of the Unruh Civil Rights Act, California Civil Code § 51 et seq.   The Website is a service, privilege, and advantage and accommodation of Defendant's services.

11.     At all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and/or scope of said agency and/or employment with the full knowledge and consent of

1    each of the Defendants.  Each of the acts and/or omissions complained of herein were

2    alleged and made known to, and ratified by, each of the other Defendants (Anastasia

3    Beverly Hills, LLC and DOE Defendants will hereafter collectively be referred to as

4    "Defendant").

5         12.    The true names and capacities of the Defendants sued herein as DOES 1

6    through 10, inclusive, are currently unknown to Plaintiffs, who therefore sue such

7    Defendants by fictitious names.  Each of the Defendants designated herein as a DOE is

8    legally responsible for the unlawful acts alleged herein.  Plaintiffs will seek leave of

9    Court to amend this Complaint to reflect the true names and capacities of the DOE

10   Defendants when such identities become known.

11                                      **FACTS**

12        **Applicability of the ADA and the Unruh Act to Commercial Websites.**

13        13.    The Internet has become a significant source of information, a portal and

14   tool for conducting business, and a means for doing everyday activities such as

15   shopping, banking, etc. for both the sighted and blind, and/or visually-impaired persons.

16        14.    Blind individuals may access websites by using keyboards in conjunction

17   with screen-reading software that vocalizes visual information on a computer screen.

18   Screen access software provides the only method by which a blind person may

19   independently access the internet.  Unless websites are designed to be read by screen

20   reading software, blind persons are unable to fully access websites and the information,

21   products and services, privileges, advantages, and accommodations contained thereon.

22        15.    The international website standards organization, W3C, has published

23   version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0").  WCAG 2.0

24   are well-established guidelines for making websites accessible to blind and visually-

25   impaired people.   These guidelines are successfully followed by numerous large

26   business entities to ensure their websites are accessible.  These guidelines recommend

27   several basic **components** for making websites accessible including, but not limited to:

28   adding invisible alternative text to graphics; ensuring that all functions can be

performed using a keyboard and not just a mouse; ensuring that image maps are accessible; and adding headings so that blind people can easily navigate websites. Without these very basic components, a website will be inaccessible to a blind or visually-impaired person using a screen reader.

16.   Within this context, numerous federal courts have recognized the viability of ADA claims against commercial website owners/operators with regard to the accessibility of such websites. *See, e.g.*, *Carroll v. Fedfinancial Fed. Credit Union*, -- F. Supp. 3d --, Civil No. 2018 WL 3212023, at *4-*7 (E.D. Va. June 25, 2018); *Castillo v. Jo-Ann Stores, LLC*, 286 F. Supp. 3d 870, 874-83 (N.D. Ohio Feb. 13, 2018); *Gathers v. 1-800-Flowers.com, Inc.*, Civil Action No. 17-cv-10273-IT, 2018 WL 839381, at *2-*5 (D. Mass. Feb. 12, 2018); *Robles v. Yum! Brands, Inc. d/b/a Pizza Hut*, Case No. 2:16-cv-08211-ODW(SS), 2018 WL 566781, at *3-*8 (C.D. Cal. Jan. 24, 2018); *Frazier v. E.L.I. Trading, Inc. d/b/a Mica Bella Cosmetics*, Case Nos. 2:16-cv-01898-AJS (lead case); 2:17-cv-00024-AJS (member case) [Dkt. 191] (W.D. Pa. Jan. 11, 2018); *Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at *3-*15 (S.D.N.Y. Dec. 20, 2017); *Rios v. New York & Co., Inc.*, Case No. 2:17-cv-04676-ODW (AGRx), 2017 WL 5564530, at *2-*7 (C.D. Cal. Nov. 16, 2017); *Access Now, Inc. v. Blue Apron, LLC*, Civil No. 17-cv-116-JL, 2017 WL 5186354, at *2-*11 (D.N.H. Nov. 8, 2017); *Gorecki v. Dave & Buster's Inc.*, Case No. CV 17-1138 PSG (AGRx), 2017 WL 6371367, at *2-*6 (C.D. Cal. Oct. 10, 2017); *Reed v. CVS Pharmacy, Inc.*, No. CV 17-3877-MWF (SKx), 2017 WL 4457508, at *3-*6 (C.D. Cal. Oct. 3, 2017); *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 387-405 (E.D.N.Y. Aug. 1, 2017) (Weinstein, J.); *Thurston v. Chino Commercial Bank, N.A.*, No. CV 17-01078 BRO (JCx), 2017 WL 3224681, at *5 (C.D. Cal. July 27, 2017) (citing *Gorecki v. Hobby Stores, Inc.*); *Markett v. Five Guys Enterprises LLC*, No. 1:17-cv-00788-KBF, 2017 WL 5054568, at *2-*3 (S.D.N.Y. July 21, 2017); *Frazier v. Cogo's, Co.*, Case Nos. 2:16-cv-01898-AJS (lead case); 2:17-cv-00091-AJS (member case) [Dkt. 171] (W.D. Pa. June 27, 2018) (consent decree); *Gorecki v. Hobby Lobby*

*Stores, Inc.*, No. 2:17-cv-01131-JFW-SK, 2017 WL 2957736, at *3-*7 (C.D. Cal. June 15, 2017) (Walter, J.); *id.* at *7 ("[T]his is a relatively straightforward claim that [defendant] failed to provide disabled individuals full and equal enjoyment of goods and services . . . by not maintaining a fully accessible website.  There is nothing unique about this case, as federal courts have resolved effective communication claims under the ADA in a wide variety of contexts-- including cases involving allegations of unequal access to goods, benefits and services provided through websites."); *Gil v. Winn-Dixie Stores, Inc.*, 257 F. Supp. 3d 1340, 1343-51 (S.D. Fla. June 13, 2017) (finding that the defendant, a large supermarket chain, had violated the plaintiff's rights under the ADA by failing to maintain an accessible website after a non-jury trial), *appeal docketed*, No. 17-13467 (11th Cir. Aug. 1, 2017); *Gniewkowski v. Lettuce Entertain You Enters., Inc.*, 251 F. Supp. 3d 908 (W.D. Pa. 2017); *OmahaSteaks.com, Inc. v. Access Now, Inc., et al.*, No. 8:17-cv-00060-LSC-CRZ [Dkt. 9-1] (D. Neb. Apr. 17, 2017) (consent decree); *Access Now, Inc., et al. v. Omahasteaks.com, Inc.*, Nos. 2:16-cv-01898-AJS (lead case), 2:17-cv-00269-AJS (member case) [Dkt. 99] (W.D. Pa. Apr. 11, 2017) (consent decree); *Gil v. Winn-Dixie Stores, Inc.*, 242 F. Supp. 3d 1315, 1317-21 (S.D. Fla. 2017); *Nat'l Ass'n of the Deaf v. Harvard Univ.*, Case 3:15-cv-30023-MGM, 2016 WL 3561622, at *12-*20 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.) (recommending the denial of a motion to dismiss or stay predicated on the primary jurisdiction doctrine), *adopted in Nat'l Ass'n of the Deaf v. Harvard Univ.*, 2016 WL 6540446, at *1-*3 (D. Mass. Nov. 3, 2016) (Mastroianni, J.); *Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*, Case 3:15- cv-30024-MGM, 2016 WL 3561631, at *1 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.)(recommending the denial of a motion to dismiss or stay predicated on the primary jurisdiction doctrine), *adopted in Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*, 2016 WL 6652471, at *1 (D. Mass. Nov. 4, 2016) (Mastroianni, J.); *Edward Davis v. Orlando Wilshire Investments Ltd., et al.*, No. 5:15-cv-01738-MWF-KK, [Dkt. 17 at 10] (C.D. Cal. Nov. 2, 2015) (Fitzgerald, J.); *Nat'l Fed'n of the Blind v. Scribd, Inc.,* 98 F. Supp. 3d 565, 576 (D. Vt. 2015); *James*

*Patrick Brown v. BPS Direct, LLC, et al.*, Case No. LACV 14-04622 JAK (JEMx), [Dkt. 30 at 4-7] (C.D. Cal. Oct. 6, 2014) (Krondstadt, J.); *Penney v. Kohl's Dep't Stores, Inc., et al.*, No. 8:14-cv-01100-CJC-DFM [Dkt. 12 at 3] (C.D. Cal. Sept. 23, 2014) (Carney, J.); *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200-02 (D. Mass. 2012); *Shields v. Walt Disney Parks and Resorts US, Inc.*, 279 F.R.D. 529, 559 (C.D. Cal. 2011) ("The lack of a widely accepted standard for website accessibility does not preclude injunctive relief that would improve access to Defendants' websites by the visually impaired."); *Nat'l Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006) ("To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute."); *Brintley v. Aeroquip Credit Union*, Case No. 17-13912 [Dkt. 37] (E.D. Mich. Aug. 30, 2018); *Brintley v. Belle River Community Credit Union*, Case No. 17-13915 [Dkt. 38] (E.D. Mich. Aug. 30, 2018); *Gomez v. General Nutrition Corp.*, No. 1:17-cv-22747-MGC [Dkt. 62] (S.D. Fla. Aug. 29, 2018); *Reed v. 1-800-Flowers.com, Inc.*, -- F. Supp. 3d --, No. 2:17-cv-05713 (ADS)(AYS), 2018 WL 4054879, at *4-*9 (E.D.N.Y. Aug. 24, 2018); *Tawam v. APCI Fed. Credit Union*, No. 5:18-cv-00122, 2018 WL 3723367, at *3-*8 (E.D. Pa. Aug. 6, 2018); *Haynes v. Dunkin' Donuts LLC*, -- Fed. Appx. --, 2018 WL 3634720, at *2 (11th Cir. July 31, 2018); *Brintley v. Aeroquip Credit Union*, -- F. Supp. 3d --, Case No. 17-13912, 2018 WL 3497139, at *2-*7 (E.D. Mich. July 20, 2018); *Brintley v. Belle River Community Credit Union*, Case No. 17-13915, 2018 WL 3497142, at *2-*7 (E.D. Mich. July 20, 2018).

17.   As noted above, Section 51(f) of the California Civil Code provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

/ / /

/ / /

/ / /

**The Inaccessibility of Defendant's Website to the Visually-Impaired**

18.    Defendant offers the commercial Website, which provides, as set forth above, a breadth of information concerning its products and other amenities and services, privileges, advantages, and accommodations.

19.    Based on information and belief, it is Defendant's policy and practice to deny blind users, including Plaintiffs, equal enjoyment of and access to the Website. Due to Defendant's failure and refusal to remove access barriers on the Website, Plaintiffs and other blind and visually impaired individuals have been denied equal enjoyment of and access to Defendant's services, advantages, privileges, and accommodations offered to the public through the Website.

20.    Defendant has denied blind individuals equal enjoyment of and access to the services, privileges, advantages, and accommodations and information made available through the Website by preventing them from freely navigating the Website. The Website contained access barriers that prevented free and full use by Plaintiffs and other blind persons using screen reading software.

21.    The Website's barriers are pervasive and include, but are not limited to, the following:

(1) Linked image missing alternative text which presents a problem because an image without alternative text results in an empty link.  Alternative Text is invisible code embedded beneath a graphical image on a website. Web accessibility requires that Alternative Text be coded with each picture so that a screen reader can speak the Alternative Text where a sighted user sees pictures.  Alternative Text does not change the visual presentation, but instead generates a text box that will pop-up when the mouse moves over the picture.  The lack of Alternative Text on these graphics prevents screen readers from accurately vocalizing a description of the graphics.  As a result, at all relevant times visually-impaired Anastasia Beverly Hills customers were unable to determine what was on the Website, browse the site, and determine whether or not to purchase Defendant's products;

(2) Empty or missing form labels which presented a problem because if a form control does not have a properly associated text label, the function or purpose of that form control may not be presented to screen reader users. Form labels provide visible descriptions and larger clickable targets for form controls;

(3) Empty links that contain no text causing the function or purpose of the link to not be presented to the user. This can introduce confusion for keyboard and screen reader users; and

(4) Redundant links where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen reader users.

22.     Due to the inaccessibility of the Website, blind and otherwise visually impaired customers who use screen readers have been hindered from effectively browsing for Defendant's products, amenities and services, privileges, advantages, and accommodations that exist online unlike sighted users.  If the Website were accessible, Plaintiffs would independently and privately investigate Defendant's products, services, privileges, advantages, accommodations, and amenities, as sighted individuals can and do.

23.     Despite several attempts to access the Website in recent months, the numerous access barriers contained on the Website have denied Plaintiffs' full and equal access, and deterred Plaintiffs on a regular basis from accessing the Website. Similarly, based on the numerous access barriers contained on the Website, Plaintiffs have been deterred from purchasing Defendant's products as Plaintiffs would have been able to do by using the Website.  Plaintiffs continue to attempt to utilize the Website and plan to continue to attempt to utilize the Website in the near future.  Plaintiffs' dignitary interests as disabled persons have been harmed by Defendant's actions.

/ / /

/ / /

/ / /

/ / /

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Violations of the Americans With Disabilities Act, 42 U.S.C. § 12181 *et seq.***

**(By Plaintiffs Against All Defendants)**

24.     Plaintiffs incorporate by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

25.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, provides:  "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

26.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations"; and "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden".  42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).  "A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that

taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense." 28 C.F.R. § 36.303(a).  In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

27.    Defendant's Website is a "public accommodation" within the meaning of 42 U.S.C. § 12181 *et seq.*  Defendant generates millions of dollars in revenue from the sale of its products and services, privileges, advantages, and accommodations in California through its services, privileges, advantages, and accommodations through the Website.  The Website is a service, privilege, advantage, and accommodation provided by Defendant that is inaccessible to patrons who are visually-impaired like Plaintiff. This inaccessibility denies visually-impaired patrons full and equal enjoyment of and access to the facilities and services, privileges, advantages, and accommodations that Defendant made available to the non-disabled public.  Defendant is violating the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, in that Defendant denies visually-impaired customers the services, privileges, advantages, and accommodations provided by the Website.  These violations are ongoing.

28.    Defendant's actions constitute intentional discrimination against Plaintiffs on the basis of a disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* in that:  Defendant has constructed a Website that is inaccessible to Plaintiffs; maintains the Website in this inaccessible form; and has failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

29.    Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiffs request relief as set forth below.

/ / /

/ / /

## **SECOND CAUSE OF ACTION**

**Violations of the Unruh Civil Rights Act, California Civil Code § 51 *et seq*.**

**(By Plaintiffs Against All Defendants)**

30.    Plaintiffs incorporate by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

31.    California Civil Code § 51 et seq. guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever.  Defendant is systematically violating the Unruh Civil Rights Act, California Civil Code § 51 *et seq*.

32.    The Website is a "business establishment" within the meaning of the California Civil Code § 51 et seq.  Defendant generates millions of dollars in revenue from the sale of its goods and services in California through the Website.  The Website is a service provided by Defendant that is inaccessible to patrons who are visually-impaired like Plaintiffs.  This inaccessibility has denied visually-impaired patrons full and equal access to the facilities and services that Defendant makes available to the non-disabled public.  Defendant has violated the Unruh Civil Rights Act, California Civil Code § 51 et seq., in that Defendant has denied visually-impaired customers the services provided by the Website.  These violations are ongoing.

33.    Defendant's actions constitute intentional discrimination against Plaintiffs on the basis of a disability in violation of the Unruh Civil Rights Act, Cal. Civil Code § 51 et seq. in that:  Defendant has constructed a website that is inaccessible to Plaintiffs; maintains the Website in this inaccessible form; and has failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

34.    Defendant is also violating the Unruh Civil Rights Act, California Civil Code § 51 *et seq.* in that the conduct alleged herein likewise constitutes a violation of various provisions of the ADA, 42 U.S.C. § 12101 *et seq.*  Section 51(f) of the

California Civil Code provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

35.   The actions of Defendant were and are in violation of the Unruh Civil Rights Act, California Civil Code § 51 *et seq.*, and, therefore, Plaintiffs are entitled to injunctive relief remedying the discrimination.

36.   Plaintiffs are also entitled to a preliminary and permanent injunction enjoining Defendant from violating the Unruh Civil Rights Act, California Civil Code § 51 *et seq.,* and requiring Defendant to take the steps necessary to make the Website readily accessible to and usable by visually-impaired individuals.

37.   Plaintiffs are also entitled to statutory minimum damages pursuant to California Civil Code § 52 for each and every offense.  Plaintiffs are also entitled to reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

1.   For a judgment that Defendant violated Plaintiffs' rights under the ADA, 42 U.S.C. § 12181 *et seq*., and the Unruh Civil Rights Act, California Civil Code § 51 *et seq.*;

2.   For a preliminary and permanent injunction pursuant to 42 U.S.C. § 12188(a)(1) and (2) and section 52.1 of the California Civil Code requiring Defendant to take the steps necessary to make the Website, www.anastasiabeverlyhills.com, readily accessible to and usable by visually-impaired individuals;

3.   An award of statutory minimum damages of $4,000 per violation pursuant to section 52(a) of the California Civil Code;

4.   For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, California Civil Code § 52(a);

5.   For pre-judgment interest to the extent permitted by law;

6.   For costs of suit; and

7.     For such other and further relief as the Court deems just and proper.

Dated:  February 3, 2019                    PACIFIC TRIAL ATTORNEYS, APC

By:_____
Scott. J. Ferrell
Attorneys for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all claims and causes of action so triable in this lawsuit.

Dated:  February 3, 2019                    PACIFIC TRIAL ATTORNEYS, APC

By:_____
Scott. J. Ferrell
Attorneys for Plaintiffs